# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————————

m 99-41075
Summary Calendar

———————————

PAUL E. SKELTON,

Plaintiff-Appellee,

VERSUS

HAL CAMP, ALDERMAN OF THE MUNICIPALITY OF PARKER; DAVID
HAMMEL, ALDERMAN OF THE MUNICIPALITY OF PARKER; ROBERT
MONTGOMERY, ALDERMAN OF THE MUNICIPALITY OF PARKER; BILL
WADE, ALDERMAN OF THE MUNICIPALITY OF PARKER; AND ROBERT DAWES;
Alderman of the Municipality of Parker,

Defendants-Appellants.

———————————

Appeal from the United States District Court
for the Eastern District of Texas

———————————

December 12, 2000

Before SMITH, BENAVIDES, and
DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Certain municipal officials appeal the denial of their motion for summary judgment in this action brought for alleged violations of statutory and constitutional rights. We dismiss the appeal for want of jurisdiction.

I.

Paul Skelton was elected mayor of Parker, Texas, on May 4, 1996, but a year later, the citizens of Parker presented the aldermen with charges for cause to remove him. The aldermen conducted a trial in closed session in

accordance with TEX. LOC. GOV'T CODE ANN. § 21.001 and removed Skelton, who then sued the aldermen in their official capacities for reinstatement and damages to his reputation. He asserted causes of action for violations of his free speech and due process rights under the United States and Texas constitutions; the Texas Open Meetings Act, TEX. GOV'T CODE ANN. §§ 551.001-.146; and TEX. LOC. GOV'T CODE ANN. § 21.002. The aldermen removed the case to federal court on the ground that Skelton's constitutional claims presented a federal question. *See* 28 U.S.C. § 1331. Skelton then amended his suit to include a claim under 42 U.S.C. § 1983 for damages to his reputation.

The aldermen amended their answer to assert judicial immunity, relying on a Texas case decided during the course of this suit that held that aldermen of a general-law municipality are officers of the state acting in the role of judges when conducting a removal trial under § 21.002. *See State ex rel. White v. Bradley*, 956 S.W.2d 725 (Tex. App.SSFort Worth 1997), *rev'd on other grounds by Bradley v. State ex rel. White,* 990 S.W.2d 245 (Tex. 1999). They then moved to dismiss for failure to state a claim on which relief could be granted and asserted judicial immunity based on the analysis in *White*. *See* FED. R. CIV. P. 12(b)(6). The district court denied the motion to dismiss without explicitly addressing the claim of judicial immunity, relying instead on the need for a reviewing court to examine the entire record of the removal trial. *See Riggins v. City of Waco,* 93 S.W. 426 (1906).

The district court granted summary judgment for Skelton with regard to his claim that the removal was substantively and procedurally defective under § 21.002, but it found that the remedy of reinstatement was no longer available, because Skelton's term had ended. The court granted summary judgment to the aldermen on Skelton's First Amendment retaliation claims but denied summary judgment as to the due process claim, because there were fact issues to be decided by a jury.

The aldermen appeal the denial of summary judgment on the due process claim, asserting their entitlement to judicial immunity under the Eleventh Amendment.[1] State officials sued in their official capacities are not persons subject to suit under § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). If the aldermen acted as state officials carrying out state law, they enjoy immunity under the Eleventh Amendment. *Pennhurst v. Halderman,* 465 U.S. 89, 121 (1984).

Skelton moves to dismiss the appeal, contending that this court does not have jurisdiction, or in the alternative, that the Eleventh Amendment may not offer an affirmative defense to the aldermen, because they are not sued in their individual capacities. Additionally, Skelton urges us to find that the Eleventh Amendment does not apply here, because (1) the city made the decision to remove Skelton; or, (2) in the alternative, that the "removal court" is itself a local political subdivision.

## II.

We have jurisdiction to review the denial of summary judgment under the collateral order doctrine if the aldermen acted as state officials, but we have no jurisdiction if they acted as

---

[1] "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. CONST. amend. 11.

municipal officers. A denial of summary judgment is not a final order within the meaning of 28 U.S.C. § 1291. *Lemoine v. New Horizons Ranch & Ctr., Inc.,* 174 F.3d 629, 633 (5th Cir. 1999).

In *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541 (1949), however, the Court recognized an exception to this final order requirement for certain collateral appeals. The denial of an Eleventh Amendment immunity claim falls within this exception. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 144-45 (1993); *Mitchell v. Forsyth,* 472 U.S. 511, 525-30 (1985).

Although the parties dispute whether the Eleventh Amendment claim was presented to the district court, "the Eleventh Amendment immunity defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court." *Edelman v. Jordan,* 415 U.S. 651, 678 (1974). We have jurisdiction over an interlocutory appeal of the denial of summary judgment involving absolute immunity where there are no material facts in dispute. *Quirk v. Mustang Eng'g, Inc.*, 143 F.3d 973, 975 (5th Cir. 1998).

Even though the district court did not expressly address the Eleventh Amendment immunity claim, that claim still forms the basis for the appeal. Asserting jurisdiction in this case, then, supports the policy of protecting the "entitlement not to stand trial or face the other burdens of litigation." *Mitchell,* 472 U.S. at 526. This entitlement is "effectively lost if a case is erroneously permitted to go to trial." *Swint v. Chambers County Comm'n,* 514 U.S. 35, 42 (1995). Thus, the aldermen's claim that they are entitled to absolute official immunity falls within the ambit of the general rule allowing interlocutory appeals based on absolute official immunity under the collateral order doctrine.

By contrast, if the aldermen acted not on behalf of the state, but rather as municipal officers when they removed Skelton from office, we do not have jurisdiction. Although a state or its officers sued in their official capacities may raise immunity defenses on interlocutory appeal, a municipal government may not. *Nicoletti v. City of Waco,* 947 F.2d 190, 191-92 (5th Cir. 1991) (citing *McKee v. City of Rockwell,* 877 F.2d 409, 412 (5th Cir. 1989)). Because a suit against the aldermen in their official capacities is the functional equivalent of a suit against the entity they represent, *see Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985), if the aldermen represented the city rather than the state during the removal proceedings, we have no jurisdiction. *See Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, ___, 2000 U.S. App. LEXIS 23177, at *9-*10 (5th Cir. Sept. 13, 2000).

### III.

The question, then, is whether, in the removal proceeding, the aldermen represented the State of Texas or the municipality.[2] We conclude that they represented the municipality.

The determination of whether an official

---

[2] The alderman also argue that they are entitled to "judicial immunity," a state law doctrine functionally identical to the absolute immunity accorded judges acting in their judicial capacity in § 1983 claims. *See Beck v. Texas State Bd. of Dental Exam'rs,* 204 F.3d 629 (5th Cir. 2000), *cert. denied*, 69 U.S.L.W. 3022 (U.S. Oct. 2, 2000) (No. 00-3). Because this doctrine applies only to officers sued in their individual capacity, it has no bearing on the outcome.

acts on behalf of the city or the state is a matter of state law. *McMillian v. Monroe County,* 520 U.S. 781, 786 (1997). The aldermen contend that because state law governed the removal proceedings, they acted as state officials rather than municipal officials. At the time of Skelton's removal, § 21.002 governed a mayor's removal from office in a general-law municipality[3] and required the aldermen to sit as a "court" over the removal "trial." *See* § 21.002(f), (g), (h). Additionally, aldermen assume the role of judges in a removal trial. *Bradley,* 990 S.W.2d at 249 (Tex. 1999).

The mere fact that the aldermen acted in accordance with state law, however, does not resolve the question dispositively. Because Parker is a "general law" city, it derives its powers from state statutes rather than from a city charter. *See* 22 DAVID B. BROOKS, TEXAS PRACTICE: MUNICIPAL LAW AND PRACTICE §§ 1.14, 3.14 (2d ed. 1999). Moreover, the assumption of a judicial role does not transform the aldermen into state actors. Indeed, aldermen participating in a removal proceeding "are not members of the judiciary, they assumed judicial roles." *Bradley*, 990 S.W.2d at 249.

In *Riggins v. Richards,* 77 S.W. 946 (Tex. 1904), an analogous case involving a city governed by a charter, the court reviewed a removal trial proceeding in which the city council had removed the mayor. The court found that the removal proceeding must be handled as an adjudicative proceeding. *Id.* at

947 (interpreting the city's charter mandating "due notice and opportunity to be heard" as requiring a trial proceeding). The city charter did not indicate that the removal process was a "court," nor did it suggest that the city council members in the removal process acted as judges.

Here, the aldermen made a similar removal decision. No law or policy justifies treating removal decisions of "general law" municipalities differently from those of other municipalities when both entities make functionally identical determinations.

IV.

The aldermen contend that the removal procedure represents an independent entity, the "removal court." Whether they acted as municipal policymakers in the removal trial has no bearing on the question of immunity, however. When individuals are sued in their official capacities under § 1983, the determination of which entity a defendant serves as policy maker presents a *liability* issue, not an *immunity* issue. *Hudson v. City of New Orleans,* 174 F.3d 677, 681 n.1 (5th Cir.), *cert. denied,* 120 S. Ct. 498 (1999); *Swint*, 514 U.S. at 43.

Thus, any transformation of the aldermen into state court judges in the removal proceeding still does not afford them Eleventh Amendment immunity. Rather, it would mean that the wrong entity had been sued, because the actions of the aldermen cannot be attributed to the municipality. Moreover, because this type of liability determination does not present an immunity issue, it does not fall within the collateral order doctrine, and we have no jurisdiction to address it.

The aldermen bear the burden of proof in

---

[3] Since the time of Skelton's removal, Texas has replaced § 21.002 with §§ 21.021-.032, which places the power of removal in the hands of a state district judge. *See* TEX. LOC. GOV'T CODE ANN. §§ 21.021-.032.

demonstrating that the "removal court" is an arm of the state entitled to Eleventh Amendment immunity. *See ISTI TV Prods., Inc. v. Agricultural Ass'ns,* 3 F.3d 1289, 1291 (9th Cir. 1993); *Christy v. Pennsylvania Turnpike Comm'n,* 54 F.3d 1140, 1144 (3d Cir.), *cert. denied,* 516 U.S. 932 (1995). We have adopted a six-factor test for evaluating whether a governmental entity is an arm of the state entitled to Eleventh Amendment immunity. *Clark v. Tarrant County*, 798 F.2d 736, 744-45 (5th Cir. 1986).

These factors include (1) whether the state law considers the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local or statewide problems; (5) whether it has the authority to sue and be sued in its own name; and (6) whether it has the right to hold and use property. *Anderson v. Red Riv. Waterway Comm'n*, No. 99-31334, slip op. at __ (5th Cir. Nov. 8, 2000). These factors aid the court in identifying whether a suit is really against the state itself. *Laje v. R.E. Thomason Gen. Hosp.,* 665 F.2d 724, 727 (5th Cir. 1982).

Texas statutes and caselaw do not suggest that a "removal court" would be considered an arm of the state. It is not identified as part of the Texas court system in the Texas Government Code. It is not supervised by the Texas Judicial Council. *See* TEX. GOV'T CODE ANN., Subtitle F. It has jurisdiction only within the town of Parker. *See* TEX. LOC. GOV'T CODE ANN. § 21.002 (1999). Its procedures are set forth in the local, not statewide, section of the state code. *Id.* The "judges" are the aldermen, not judges elected in accordance with the usual state procedures. The process for appealing the "removal court's" decisions are not the same as for other courts in the state system. Therefore, the "removal court" is not part of the town itself, but is part of the local governing structure.

The second factor is usually accorded the most weight. *See Delahoussaye v. City of New Iberia,* 937 F.2d 144, 147-48 (5th Cir. 1991). The parties agree that the State of Texas gives the "removal court" no funding. The "court" used entirely city facilities and staff. The aldermen do not suggest that the state would not pay any judgment rendered against the "removal court."

The remaining factors also counsel in favor of finding that any "removal court" that may exist is a purely local entity. The aldermen have complete local autonomy with regard to the removal proceeding, which addresses purely local problems. The entity cannot sue and be sued, nor can it hold and use property. Thus, the aldermen have not met their burden of proof in demonstrating that they are entitled to immunity because they acted on behalf of a state "removal court."

Therefore, the aldermen have demonstrated neither that they acted as state officials nor that the "removal court" is an arm of the state. Because the aldermen are municipal officers sued in their official capacity, we do not have jurisdiction to review the denial of summary judgment.

The appeal is DISMISSED for want of jurisdiction.