*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0175P (6th Cir.)
File Name: 02a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SHARON L. GRAGG,
     *Plaintiff-Appellee,*

    *v.*

KENTUCKY CABINET FOR
WORKFORCE DEVELOPMENT;
SOMERSET TECHNICAL
COLLEGE; KENTUCKY
COMMUNITY AND TECHNICAL
COLLEGE SYSTEM; ANN W.
CLINE, Dr., Individually;
CAROL ANN VANHOOK, Dr.,
Individually; WILLIAM D.
HUSTON, Individually;
CHARLES WADE, Dr.,
Individually; RODNEY "BIZ"
CAIN, Individually; DELMUS
MURRELL, Individually,
    *Defendants-Appellants.*

No. 01-5171

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 97-00457—Jennifer B. Coffman, District Judge.

Argued: December 4, 2001

Decided and Filed:  May 20, 2002

Before:  NORRIS, SILER, and BATCHELDER, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  D. Brent Irvin, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellants.  Winter R. Huff, LAW OFFICES OF JOHN G. PRATHER, Somerset, Kentucky, for Appellee.  **ON BRIEF:**  D. Brent Irvin, Kent T. Young, Brenda D. Allen, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellants.  Winter R. Huff, LAW OFFICES OF JOHN G. PRATHER, Somerset, Kentucky, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.  Defendants-Appellants appeal the order of the district court denying their motion for summary judgment on immunity grounds on plaintiff-appellee Sharon Gragg's claims of retaliatory discharge in violation of the First Amendment and the Kentucky Constitution.  Because we conclude that the undisputed facts clearly demonstrate that the speech to which Gragg points as the reason for her discharge did not involve matters of public concern, we hold that the district court erred in denying the motion for summary judgment.

We therefore hold that the defendants in their individual capacities are entitled to qualified immunity.  We further hold that in light of Gragg's failure to demonstrate that any constitutional right was violated at all, Gragg's claims that her employment was terminated in retaliation for her exercising her rights to free speech must be dismissed.

**CONCLUSION**

For the foregoing reasons, we REVERSE the judgment of the district court denying summary judgment to the defendants on the plaintiff's First Amendment and Kentucky law retaliation claims, and we REMAND this matter to the district court with instructions to enter judgment for all of the defendants on those claims.

issue that can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. The letter is more akin to an internal dispute over a job than a plea of a concerned citizen to her government to follow proper procedures. If it were otherwise, an employee could characterize any internal dispute or grievance as relating to a matter of public concern simply by alleging that his employer did not follow proper and efficient procedures. *Rahn*, 31 F.3d at 412.

In short, we conclude that all of the speech that Gragg points to as protected falls outside of the public realm. Gragg's complaints are well within the characterization of *Connick* that:

> [t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Connick*, 461 U.S. at 149. We therefore need not reach the issue of whether Gragg's interest in making her statements outweighs the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. Because her speech did not touch on matters of public concern, it cannot come within *Pickering*'s definition of protected speech. *Id.* Because Gragg cannot show that she was engaged in protected conduct, she cannot meet *Wilson*'s first requirement, namely that the defendants' conduct violated a constitutional right at all. *Wilson,* 526 U.S. at 609.

## I.

In 1996, when the events leading to this lawsuit occurred, the Kentucky Department of Technical Education ("DTE") operated Kentucky's post-secondary vocational colleges. The DTE was governed by the State Board for Adult and Technical Education, which in turn was governed by the Kentucky Cabinet for Workforce Development ("Cabinet"). Early in 1996, the Kentucky General Assembly reduced the authorized full-time workforce for the DTE, necessitating the elimination of more than forty-five positions. Sharon Gragg was at that time employed by the DTE as a regional[1] educational consultant[2] at Somerset Technical College ("Somerset") in the DTE's Southern Region. Gragg's immediate supervisor was Dr. Carol Ann VanHook, the director of Somerset; VanHook's supervisor was Dr. Ann W. Cline, the director of the Southern Region of the DTE; Delmus Murrell was the Deputy Commissioner. The DTE Commissioner was William Huston.

Huston circulated memoranda to the administrators whose assistance he would need in determining what positions could be eliminated in order to comply with the mandated workforce reduction; he provided criteria to be considered in making the determinations; and he held a meeting with those administrators. One of the positions ultimately selected for elimination was Sharon Gragg's; according to the correspondence from Gragg's immediate supervisor,

---

[1] There were six regions for the Kentucky Department of Technical Education.

[2] Gragg's position was anomalous in that she was a regional coordinator at one of the local schools working primarily on projects for that one school instead of regional issues. Prior to the reduction in positions at issue in this law suit, the number of regional coordinator positions had been reduced from two to one per region. The Southern Region, for reasons not explained in the record, continued to have two regional coordinators.

VanHook, and VanHook's supervisor, Cline, Gragg's position was selected because it was inconsistent with DTE statewide staffing patterns, and elimination of that position would cause the least disruption to the services provided to the students at Somerset.

Gragg participated in an informal pretermination hearing, after which her attorney sent a letter to the Cabinet's general counsel contesting the decision to eliminate Gragg's position, criticizing the criteria used in selecting the positions to eliminate, and questioning the hiring of a young man as the Dean of Instruction at Somerset immediately prior to the budget constraint imposed by the General Assembly and so close in time to the elimination of Gragg's position. The DTE's general counsel did not respond to the letter.

Gragg was laid off in October of 1996. She filed a state administrative appeal—ultimately dismissed as untimely—and charges of gender and age discrimination with the Equal Employment Opportunity Commission ("E.E.O.C."). After receiving a right-to-sue letter from the E.E.O.C., Gragg filed this action against the Cabinet,[3] other agencies, and various officials, in both their official and individual capacities, claiming that the defendants had terminated her employment in retaliation for her exercising her rights under the Kentucky Constitution and the First Amendment of the Constitution of the United States, in violation of state and federal law prohibiting discrimination in employment on the basis of gender and age, and in violation of Kentucky's Whistleblower Act.

The district court dismissed most of Gragg's claims several months after the suit was filed, and those claims are not before us in this appeal. We will confine our review of the facts to those that underlie the First Amendment and

---

[3] The Kentucky Community and Technical College System was eventually substituted for the Cabinet as a defendant.

data errors she noted, or whether they related to an important or a trivial aspect of the accreditation process. And it is undisputed that these complaints were not disseminated to anyone other than Cline and VanHook. Unlike other instances where this court has determined that employee speech referred to a matter of public concern—exposing a public agency's fraud, for example, *see Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986)—these matters were internal grievances unrelated to larger issues of policy.

Of potentially more significance is Gragg's urging the nursing faculty to take to defendant Murrell their grievance over the placement of a secretary hired with federal money into a program not covered by those funds. But here again, the record demonstrates beyond peradventure that Gragg was not attempting to expose fraud and corruption—or even relatively innocuous wrongdoing or error—on the part of the agency; rather Gragg was simply advising the employees who believed they were being denied the services of that secretary how they should pursue their employment grievance.

Finally, there is the letter from Gragg's attorney to the Cabinet's general counsel. The district court ruled that the letter criticized the DTE's decision-making process and that such criticism was a broad public concern rather than merely a narrow claim motivated by Gragg's own self-interest. We disagree. That letter expresses the view of Gragg's counsel that the process and criteria used by the DTE could have been different. Looking at the letter in context, as this court is required to do, the fact that it came on the heels of Gragg's pretermination hearing makes it clear that the letter was not intended as a larger indictment of the DTE selection process, but was instead a last-ditch effort to preserve her position. All of the arguments made in the letter related directly to the preservation of Gragg's position, and while some of the issues raised in the letter—for example, the process by which Gragg's position was selected for abolition—may have implications beyond Gragg, that fact alone does not make them issues of public concern. Nothing in the letter raises any

Where the speech at issue involves mixed questions of private and public concern, that is, where the employee speaks both as an employee and as a citizen, the court must make a factual determination whether the employee's personal interest predominates over her interest as a citizen. We have held that this is "primarily a content-based inquiry, not an exclusively motive-based inquiry." *Vaughn*, 269 F.3d at 716 (quotations omitted).

Gragg argues that her speech was a matter of public concern, relying heavily on the assertion that she was criticizing the allegedly improper functioning of her agency employer and the improper allocation of public monies. However, the fact that an issue involves public money is alone not enough to convert expressive activity into commentary on a matter of public concern. *Rahn v. Drake Center, Inc.*, 31 F.3d 407, 412 (6th Cir. 1994). Nor does a matter become one of public concern simply because, in other circumstances, its subject matter might be of public interest. *See Connick*, 461 U.S. at 148 n.8. The point of the protection afforded public employees is to allow public employees a voice on issues actually affecting and interesting the community at large.

The district court characterized Gragg's complaints to Cline and VanHook with regard to errors made by committee members and data errors in the self-study process as touching on the "proper accreditation of a state educational institution." The record clearly demonstrates, however, that reality is less grand. Gragg's protest to Cline that VanHook had improperly told her to correct the work of a committee member and her protest to VanHook that correction of data errors was not her responsibility were objections to being told to do work that Gragg viewed as someone else's job. Nothing whatsoever in their content, form or context indicates that Gragg was expressing concern about the accreditation of the school, or about the procedures or policies themselves. Worthy of note is the fact that Gragg has provided no substantive content to her criticisms. We do not know, for example, what kind of

Kentucky Constitution retaliation claims, which are the subject of this interlocutory appeal.

Germane to this appeal are Gragg's claims that the defendants eliminated her position because, during the course of her employment at Somerset, she had "pointed out areas of deficiency and of concern," and had been "critical of the Defendants and their administration, acts and omissions." Gragg points to several instances in which she claims that she engaged in conduct protected by the First Amendment, and for which she claims the defendants retaliated against her by eliminating her position.

Gragg's position with the DTE was that of a liaison between Somerset and its accrediting body, and much of her time was devoted to the school's accreditation self-study, which Gragg was required to perform every five years. Gragg claims that she "brought to the attention of the Defendant Cline her questions and concerns regarding the Defendant VanHook's failure to follow proper policies and procedures relevant to the accreditation process." According to Gragg, members of the committee responsible for the 1995 study made errors in their reports that VanHook required Gragg to correct; Gragg believed that this was not the proper procedure to be followed in the accreditation process, and informed Cline of her concern. Gragg also claimed that she brought to VanHook's attention her concerns that some of the data upon which the accreditation was to be based was not correct. VanHook again insisted that Gragg correct the errors when, in Gragg's view, her job was not to correct such errors but to bring them to the attention of her supervisor. Gragg further claims that she suggested that the coordinator of Somerset's licensed practical nursing program pursue "up the chain of command" concerns that VanHook was misusing federal funds by assigning a secretary paid out of those funds to a program not covered by the federal monies. And finally, after Gragg's pretermination hearing, her counsel sent a letter to the Cabinet's general counsel, criticizing every aspect of the

process and criteria used in determining which positions to eliminate.

The district court dismissed or granted summary judgment to the defendants on all of Gragg's claims except those for termination of employment in retaliation for Gragg's exercising her rights under the First Amendment and the Kentucky Constitution.[4]    The defendants bring this interlocutory appeal, claiming qualified immunity, Eleventh Amendment immunity and immunity under state law.

## II.

We turn first to the defendants' claim of Eleventh Amendment immunity. Although the defendants raised this defense in their answer to Gragg's amended complaint, they did not identify the claims to which it applied, nor did they argue this immunity defense before the district court. In their brief on appeal, the defendants devote one page to a perfunctory statement that because the Eleventh Amendment provides immunity to the state and its agencies, Gragg's state constitutional claims against the defendants are barred.

Ordinarily, we will not consider issues that have not been fully developed by the briefs or in the record. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (quotations omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,

---

[4]The district court dismissed Gragg's due process and equal protection claims raised under Section 2 of the Kentucky Constitution. The court then held that this constitutional claim was limited to Gragg's claim that her employment was terminated "due to constitutionally protected speech," and that "[b]ecause the doctrine of qualified immunity does not embrace the plaintiff's claims for First Amendment retaliation, such a defense will not protect the defendants from liability under § 2." Whether Section 2 of the Kentucky Constitution can be read to include a claim of retaliation for engaging in protected speech is not squarely before us in this appeal. Whether the defendants are entitled to qualified immunity on such a claim, however, is.

whether the speech addresses a matter of public concern by looking to the "content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. Because of the need to provide government officials with the ability to manage their offices without "intrusive oversight by the judiciary," *id.* at 146, our concern must be to protect those expressive activities of a public employee when he speaks as a citizen on a public matter; that concern ordinarily does not extend to a public employee's speaking as an employee on matters only of his personal interest. *Id.* at 147.

In *Connick*, the plaintiff, an assistant district attorney, prepared and distributed to her colleagues, a questionnaire concerning a number of office policy issues such as morale and confidence in supervisors. *Id.* at 141. One question in the questionnaire asked whether the other assistant attorneys felt pressured to work in political campaigns. *Id.* The plaintiff was fired, in part, because of her distribution of the questionnaire. The Court ruled that only the question relating to pressure to work on political campaigns touched on a matter of public concern. *Id.* at 148-49. Since "there is a demonstrated interest in this county that government service should depend upon meritorious performance rather than political service," the Court held that the plaintiff's question about coerced political activity was a "matter of interest to the community." *Id.* at 149. As to the other matters, the Court further explained that:

> [W]e do not believe these questions are of public import in evaluating the performance of the District Attorney as an elected official. Myers did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases. Nor did Myers seek to bring to light actual or potential wrongdoing or breach of public trust on the part of Connick and others.

*Id.* at 148.

## IV.

Gragg claims that the defendants terminated her employment because she exercised her First Amendment right to free speech.[6]   To establish a prima facie case that the defendants' action in terminating her employment violated her First Amendment right, Gragg must demonstrate:

> (1) that [s]he was engaged in a constitutionally protected activity; (2) that the defendant[s'] adverse action caused [her] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of [her] constitutional rights.

*Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 715 (6th Cir. 2001) (citing *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir.2000)).

It is at the first step of this analysis that Gragg's claims fail.

Speech is protected when it addresses a matter of public concern, and the employee's interest in making such statements outweighs the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  A public concern is one relating to "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).  We determine

---

[6] The parties have not pointed us to any authority that would define the contours of a free speech right under Section 2 of the Kentucky Constitution—or any other section of the Kentucky Constitution, for that matter.  To the extent that this is a free speech claim at all, we will assume the right has the same contours as a right under the First Amendment.

are deemed waived.").  And the Supreme Court has now made it clear that we are not required to raise the issue of Eleventh Amendment immunity if the state has not done so. *See Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998).  Although this circuit has not definitively answered the question of who bears the burden when a defendant invokes Eleventh Amendment immunity, other circuits to address the issue have determined that, "[l]ike any other such defense, that which is promised by the Eleventh Amendment must be proved by the party that asserts it and would benefit from its acceptance." *ITSI TV Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993). *See also Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000) (ruling that a defendant seeking Eleventh Amendment immunity had the burden to show that it was an arm of the state); *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995) ("We conclude that the party asserting Eleventh Amendment immunity . . . bears the burden of proving its applicability."); *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734 n.5 (7th Cir. 1994) (same).  We find the reasoning of these cases persuasive and hold that the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state.

Gragg did not bring this action against the State of Kentucky.  Rather, she sued the Kentucky Cabinet for Workforce Development, Somerset Technical College, the Kentucky Community and Technical College System, and various officials.  These defendants have pointed to nothing in the record, and we have been unable to find anything in the record, that would establish that they are arms of the state entitled to the protections of the Eleventh Amendment.  For example, there is nothing in the record to show: "how state law defines the entity, what degree of control the state maintains over the entity, where the funds for the entity are derived, and who is responsible for judgment against the entity." *Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999) (citation and quotations omitted).  We therefore hold

that the defendants have waived the defense of Eleventh Amendment immunity.

## III.

We review de novo an interlocutory appeal of a denial of summary judgment predicated on a claim of qualified immunity. *Mattox v. City of Forest Park*, 183 F.3d 515, 519 (6th Cir. 1999). Following *Johnson v. Jones*, 515 U.S. 304, 313 (1995), we have held that on an interlocutory appeal of the denial of qualified immunity we must assume the facts to be as the plaintiff has presented them; we may then review the purely legal question of whether on those facts, the plaintiff has demonstrated that the defendant violated her constitutional right. We then may turn to the question of whether that right was clearly established at the time. *Turner v. Scott*, 119 F.3d 425, 428-29 (6th Cir. 1997). Qualified immunity is available as a defense to claims raised under the state constitution as well as claims raised under the Federal Constitution:

> Qualified immunity is a defense that can be invoked under Kentucky law. "[G]overnment officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000) (quoting *McCollum v. Garrett*, 880 S.W.2d 530, 534 (Ky.1994))

To prevail against a defense of qualified immunity a plaintiff must first establish the constitutional right that she claims was violated by the defendants. *Wilson v. Layne,* 526 U.S. 603, 609 (1999) (holding that a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation").

She must then demonstrate that this right was clearly established at the time of the infringement. A right is clearly established if:

> The contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). We look first to the decisions of the Supreme Court, and then to the case law of this circuit in determining whether the right claimed was clearly established[5] when the action complained of occurred. *Black v. Parke*, 4 F.3d 442, 445 (6th Cir. 1993) (quotations omitted) (noting that "it is only in extraordinary cases that we can look beyond Supreme Court and Sixth Circuit precedent to find clearly established law"). For the right to be clearly established the case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Saylor v. Bd. of Educ. of Harlan County*, 118 F.3d 507, 515 (6th Cir. 1997) (quoting *Lassiter v. Ala. A & M Univ., Bd. of Trs.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)). *See also Saucier v. Katz*, 533 U.S. 194, 202 (2001) (holding that a right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

---

[5]To determine whether the claimed right under the Kentucky Constitution was clearly established, we would, of course, look to the law of Kentucky as well.