# United States Court of Appeals
# for the Fifth Circuit

_____

No. 23-20619
_____

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2025

Lyle W. Cayce
Clerk

Roberta Redding-Guidry,

*Plaintiff—Appellant*,

*versus*

Harmony Public Schools,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-2299

_____

Before Haynes, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant Roberta Redding-Guidry sued her former employer Defendant-Appellee Harmony Public Schools, a nonprofit organization operating charter schools in Texas, alleging that she suffered discrimination, retaliation, a hostile work environment, and was constructively discharged because of her race in violation of federal law. The district court dismissed Redding-Guidry's claims, concluding Harmony was

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20619

an arm of the State of Texas and therefore shared Texas's sovereign immunity. Because additional factual development is necessary to properly assess Harmony's sovereign immunity, we vacate and remand for further proceedings.

I.

Roberta Redding-Guidry, a black woman, sued her former employer Harmony Public Schools, alleging discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981 and constructive discharge under 42 U.S.C. § 2000e, *et seq.*

Redding-Guidry taught at Harmony from December 2013 to August 2022. On August 9, 2021, she filed an internal complaint through the Texas Classroom Teachers Association, alleging discrimination based on race and a hostile work environment. On March 24, 2022, Redding-Guidry filed a charge of discrimination against Harmony with the EEOC. The EEOC issued a right-to-sue letter on April 13, 2022, and Redding-Guidry filed suit on July 12, 2022. On May 22, 2023, she filed her Third Amended Complaint. The parties consented to have the case decided before a magistrate judge.[1] Harmony moved to dismiss, arguing the court lacked subject-matter jurisdiction over Redding-Guidry's § 1981 claims because Harmony enjoys Eleventh Amendment sovereign immunity as an arm of the State of Texas.

To resolve the sovereign immunity issue, the district court applied the "*Clark* factors," analyzing: (1) whether state statutes and case law view Harmony as an arm of the state; (2) the source of Harmony's funding; (3) Harmony's degree of local autonomy; (4) whether Harmony is concerned primarily with local, as opposed to statewide, problems; (5) whether

---

[1] Matters resolved by a consented-to magistrate judge are appealable on the same grounds as those resolved by a district judge. 28 U.S.C. § 636(c)(3).

No. 23-20619

Harmony has the authority to sue and be sued in its own name; and (6) whether Harmony has the right to hold and use property. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744–45 (5th Cir. 1986). The court determined factors one, two, three, and five favored immunity, while factors four and six cut against immunity. Balancing the factors, the court concluded Harmony is an arm of Texas and shared its sovereign immunity. The court thus dismissed Redding-Guidry's § 1981 claims and consequently dismissed her constructive discharge claim because it is not a freestanding federal cause of action. Redding-Guidry appealed.

## II.

We review the district court's determination of sovereign immunity *de novo*. *Richardson v. Flores*, 28 F.4th 649, 653 (5th Cir. 2022).

## III.

Harmony bears the burden of demonstrating it is an arm of the state under the *Clark* factors. *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000). Neither party challenges the district court's application of factors three, four, and six. Therefore, we review only factors one, two, and five.

Our analysis is informed by *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174 (5th Cir. 2023), where we held that IDEA Public Schools, another nonprofit organization operating charter schools in Texas, was not an arm of the state entitled to sovereign immunity. *See Hopkins v. Wayside Schs.*, No. 23-50600, 2024 WL 3738478, at *6 (5th Cir. Aug. 9, 2024) (per curiam) ("Before delving into the *Clark* factors, it is worth noting at the outset the import of this court's prior *Springboards* decision in guiding our analysis.").

We conclude that factor one favors immunity and that factor five cuts against immunity. Because assessing factor two requires developing additional facts, however, we remand for further proceedings.

## A.

First, Redding-Guidry argues that amendments to Texas law effective June 12, 2023, which require municipalities to treat open-enrollment charter schools as school districts for zoning purposes, show that Harmony is not an arm of the state. This is effectively a challenge to the district court's factor one analysis, which examines what state statutes and precedent say about an entity like Harmony. Her point is unavailing. Texas statutes and case law still "reflect[ ] the state's view that suing [Harmony] is equivalent to suing the state of Texas itself." *Springboards*, 62 F.4th at 179 (quoting *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 328 (5th Cir. 2002)). Factor one favors immunity.

## B.

We turn to the second *Clark* factor, which looks at Harmony's funding. It is the most important factor, given that "one of the Eleventh Amendment's central purposes is to protect state treasuries from involuntary liability." *Springboards,* 62 F.4th at 180. This inquiry has two components: We consider both the state's liability for a judgment rendered against the entity and the state's liability for the entity's general debts and obligations. *Ibid.* We have held that when an entity receives "ample funding" from non-state sources, factor two "cuts sharply against . . . immunity." *Ibid.*

The district court determined factor two was "a powerful argument for immunity" because Harmony "received 87.5% of its funding from the State" in fiscal year 2021. The district court relied on Harmony CEO/Superintendent Fatih Ay's affidavit, which states:

> For the fiscal year ended June 30, 2021, Harmony Public Schools received $436,578,512 in total revenues, as disclosed on the Statement of Activities included in the Financial Statements and Supplementary Information. Of that amount, $381,898,886 (or 87.5%) is from the State of Texas.

Ay's affidavit further submits that "10.5% comes from federal revenues" and "2.1% comes from local revenue sources." The district court concluded that this level of state funding was analogous to the "lion's share" of state funding the Region 20 Education Service Center received in *Perez*, 307 F.3d at 329, and greater than the share of state revenues the IDEA schools received in *Springboards*, 62 F.4th at 180.

Redding-Guidry contends, however, that the Statement of Activities on which Ay relies does not list Harmony's standalone revenues from the State of Texas.[2] On this record, we cannot say whether she is correct. While the referenced Statement is not in the record, Harmony's 2023 Statement appears to support Redding-Guidry's concerns. The 2023 Statement reflects only that Harmony received $419,779,298 (76.5%) in aggregate from "[s]tate aid, state grants *and local grants*" (emphasis added).

Ay's affidavit offers no explanation for why the aggregated state and local revenues listed in Harmony's Statements are attributable solely to Texas (as opposed to local sources). Additionally, the 2023 Statement shows Harmony received $104,214,415 (19%) in federal grants and $24,959,908 (4.5%) in donations, interest income, and other income. So, even without disaggregating the local grants, Harmony's share of non-state funding is virtually identical to the charter schools in *Springboards*. *See* 62 F.4th at 180

---

[2] *See Cutrer v. Tarrant Cnty. Loc. Workforce Dev. Bd.*, 943 F.3d 265, 271 (5th Cir. 2019) (denying immunity when an entity failed to demonstrate its reliance on "*state* funds (as opposed to, say, local funds)"); *Springboards*, 62 F.4th at 180 ("The Eleventh Amendment is concerned only about the potential impact on the state treasury.").

(finding factor two "cut[ ] sharply" against immunity when "roughly a quarter" of the annual revenues were from non-state sources).

Beyond its inconclusive funding figures, Harmony "points to no evidence that Texas is obligated to indemnify it" or that Texas is liable for Harmony's general debts or obligations *Id.* at 180–81; *Hennessey v. Univ. of Kansas Hosp. Auth.*, 53 F.4th 516, 542 (10th Cir. 2022) (holding that because defendant bore the burden of proving it was an arm of the state, "any uncertainty regarding [defendant's] finances weigh[ed] against [defendant's] position").

In sum, further factual development concerning Harmony's funding sources is necessary to properly assess factor two, which is the most important in the *Clark* analysis.[3]

## C.

Finally, we address the fifth *Clark* factor, which "carries little weight" and "considers whether the entity can sue and be sued in its own name." *Springboards*, 62 F.4th at 182. Texas law is silent as to whether charter schools can sue or be sued in their own name. *Ibid.* The IDEA schools in *Springboards* had a history of suing and being sued in their own name, which cuts against sovereign immunity. *Ibid.* Harmony does not say whether it has a similar history, but judicial records confirm it does. *See, e.g.*, *Harmony Pub. Schs. v. IPM Constr., Inc.*, No. 2021-53065 (Tex. 11th Jud. Dist. Ct. 2021); *Kocak v. Harmony Pub. Schs.*, No. 5:22-cv-00636 (W.D. Tex. 2022); *Walker v. Harmony Pub. Schs.*, No. 4:20-cv-3872 (S.D. Tex. 2020); *United States v.*

---

[3] We do not address Redding-Guidry's contention that counsel for Harmony violated the Texas Disciplinary Rules of Professional Conduct.

No. 23-20619

*Harmony Pub. Schs.*, No. 1:14-cv-00193 (W.D. Tex. 2014). Factor five weighs against immunity.

\*    \*    \*

In sum, the district court concluded factor three favors immunity and factors four and six cut against immunity. These are uncontested. On appeal, we determine factor one favors immunity while factor five cuts against immunity. Additional factual development concerning Harmony's funding sources is necessary to rule on factor two, the most important factor.

## IV.

We VACATE the judgment dismissing Redding-Guidry's Third Amended Complaint and REMAND for further proceedings consistent with this opinion.