NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0246n.06
Filed: April 3, 2007

No. 05-6619

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JONATHAN T. HALFACRE, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| HOME DEPOT, U.S.A., INC., | ) | O P I N I O N |
| | ) | |
| *Defendant-Appellee.* | ) | |

BEFORE:    COLE, SUTTON, and COOK, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant Jonathan T. Halfacre appeals the

district court's order granting summary judgment to his employer, Defendant-Appellee Home Depot,

U.S.A., Inc. on his racial discrimination and retaliation claims under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e-2(a), 3(a).  Halfacre, who is black, contends that Home Depot (1)

unlawfully discriminated against him based on his race when it failed to promote him to a

supervisory position, and (2) unlawfully retaliated against him with lower performance-evaluation

scores for filing a discrimination charge based on the failure to promote.  The district court

concluded that Home Depot was entitled to summary judgment because (1) it had a legitimate

concern that Halfacre's commitment to his second job with the local fire department made him

- 1 -

unqualified for the supervisor position, and (2) the lower performance-evaluation scores did not amount to actionable retaliatory conduct. We agree with the first conclusion, but, in light of the Supreme Court's recent decision in *Burlington Northern & Santa Fe Railway Co. v. White*, __ U.S. __, 126 S. Ct. 2405 (2006), we **REVERSE** the district court's judgment in part and **REMAND** for further proceedings regarding Halfacre's retaliation claim.

## I. BACKGROUND

Halfacre has two jobs in Tennessee. He works for the Memphis Fire Department and for Home Depot in Collierville, a Memphis suburb.

Halfacre began working for the Fire Department in 1979 and is currently employed as a driver. The Fire Department requires him to work three non-consecutive, twenty-four-hour shifts every nine days. His work schedule is flexible; if he needs to substitute out of a shift, he may switch shifts with any other qualified driver who has not worked during the previous twelve hours and who agrees to the switch.

Halfacre began working for Home Depot in 1996 in Memphis. He ceased working there for approximately six months in 2000, and then rejoined the company at the Collierville store. He is currently a full-time associate in the paint department there.

The position of Paint Department Supervisor at the Collierville Home Depot became available in early 2003. According to its Regional Human Resource Director, Home Depot requires that its Department Supervisors "be available to work a fully flexible schedule according to the needs of Home Depot's business." *Halfacre v. Home Depot*, No. 04-2483, 2005 WL 2114060, at *1 (W.D. Tenn. Aug. 26, 2005). This requirement is also stated in the Department Supervisor job description.

In several instances, Home Depot ignored this requirement: Home Depot allowed Reco Watson to be a Department Supervisor, though he was attending college classes that conflicted with his work schedule; Home Depot also allowed Art Pruitt to be an Assistant Manager, though he had a second job at Federal Express; and Home Depot allowed William Boone to be a Department Supervisor, though he had a second job as a fireman in Collierville. Each of these men is black.

In at least one instance (besides that involving Halfacre), however, Home Depot abided by its policy and prevented an employee from serving as a Department Supervisor because her schedule was not sufficiently flexible: Home Depot required Lisa Yancey, who is white, to step down from that position because she was also enrolled in school.

Halfacre expressed interest in obtaining the Paint Department Supervisor position. Halfacre's work schedule with the Fire Department is flexible and does not prevent him from working at Home Depot whenever he is needed. On the other hand, it is possible that situations could arise where Halfacre could not find someone at the Fire Department to swap shifts with him. Ginnie McDaniels, the Assistant Store Manager at the Collierville Home Depot, told Halfacre in April 2003 that he "would make a great manager" and that she "would love to have [him] in management," but that she was concerned about his "fire department availability." *Id.* at *2. Home Depot did not interview Halfacre for the position, and Dave Nicholas, who is white, obtained the position. Matt Murphy, the Store Manager at the Collierville Home Depot, told Halfacre in July 2003 that he was not considered for the promotion because of the requirements of his job with the Fire Department.

On July 10, 2003, Halfacre filed a charge of discrimination with the Equal Employment

Opportunity Commission (EEOC), alleging that Home Depot's promotion of Nicholas, a "less qualified white employee from a different department," amounted to unlawful racial discrimination in violation of Title VII.

In September 2003, Halfacre received a performance evaluation with an overall performance grade that was lower than grades from prior evaluations. The four possible performance grades are "outstanding," "achiever," "performer," and "improvement needed." Halfacre received a "performer" grade on this evaluation. The performance evaluation also includes a "potential code," which can be one of four possible grades: "high potential," "promotable," "grow in position," and "placement issue." Halfacre received a potential code of "promotable." After receiving this evaluation, Halfacre met with various supervisory personnel, including Home Depot's District Manager for the District covering the Collierville store, to voice concerns about the evaluation. Home Depot agreed to re-examine Halfacre's evaluation and complete another one for him. Halfacre received this second evaluation in December 2003, and, like the first evaluation, it listed Halfacre's strengths but left his "performer" performance ranking and "promotable" potential ranking in place. Following the evaluations, Halfacre received a fifty-five-cent-per-hour raise, about five percent of his salary.

On March 5, 2004, Halfacre filed a second charge with the EEOC, alleging that Home Depot underrated him in his performance evaluation in retaliation for filing his first charge of discrimination.

On March 31, 2004, the EEOC issued Halfacre a right-to-sue letter based on his first claim (discrimination), and he filed suit under Title VII in district court on June 29, 2004. On September

2, 2004, the EEOC issued Halfacre a right-to-sue letter based on his second claim (retaliation), and he filed suit under Title VII in district court on December 2, 2004. The two lawsuits were then consolidated. In the district court, Halfacre contended that Home Depot violated Title VII by engaging in (1) hostile-work-environment discrimination, (2) disparate treatment, and (3) retaliation. He also brought certain state-law claims of discrimination and retaliation.

The district court granted Home Depot's motion for summary judgment. First, it concluded that Halfacre could not raise the hostile-work-environment claim because he had not raised it in his EEOC charges. Second, the court rejected the disparate-treatment claim because Halfacre failed to show that Home Depot's articulated reason for not promoting him (its concern about his schedule) was a pretext for racial discrimination. Third, the court rejected the retaliation claim, noting that receiving a lower performance-evaluation score than one feels is warranted is not an adverse employment action sufficient to state a claim. Finally, having dismissed the federal claims, the court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them without prejudice. Halfacre now appeals, challenging only the second and third of these conclusions: the grant of summary judgment on his Title VII disparate-treatment and retaliation claims.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although all "inferences to be drawn from the underlying facts . . . must be viewed in the

light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), summary judgment must be entered against the opposing party if it "fails to make a showing sufficient to establish the existence of an element essential to . . . [its] case, and on which . . . [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court reviews de novo the grant of summary judgment. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc).

**B.     Merits**

Halfacre contends on appeal that (1) Home Depot's failure to promote him to Paint Department Supervisor at the Collierville store amounted to unlawful discrimination, and (2) his performance-evaluation scores at that store amounted to unlawful retaliation for filing his discrimination claim with the EEOC.

His brief, however, also refers to alleged promotions he sought but did not receive at the Memphis store, during his earlier period of employment with Home Depot from August 1996 to May 2000. (Halfacre's Br. 8 n.1, 9.) We do not consider the allegations regarding that store because they were not raised in Halfacre's EEOC charges and, in any event, they are time-barred. *See EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977) (noting that complaint asserting Title VII claims is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination"); 42 U.S.C. § 2000e-5(e)(1) (requiring that a plaintiff file discrimination charge with the EEOC within 180 days of the alleged adverse employment action).

Accordingly, we address Halfacre's discrimination and retaliation claims regarding the

Collierville Home Depot only. As discussed below, we conclude the district court properly granted summary judgment to Home Depot on the discrimination claim, but, in light of intervening Supreme Court precedent, erred in granting summary judgment on the retaliation claim.

    1.    <u>Discrimination Claim</u>

Halfacre contends that Home Depot was not entitled to summary judgment on his claim that Home Depot unlawfully discriminated against him based on his race when it promoted Dave Nicholas, who is white, to Paint Department Supervisor instead of Halfacre. Title VII forbids employers from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 28 U.S.C. § 2000e-2(a). At the summary-judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on a Title VII race-discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

Direct evidence is evidence that is free of inferences and that, if believed, requires a finding that "unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006); *accord Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1249 (6th Cir. 1995) (affidavits by plaintiff and witnesses setting forth racist comments made by restaurant owners constituted direct evidence of discrimination). Halfacre has not presented any direct evidence of discrimination here; he contends circumstantial evidence supports his claim.

Under the circumstantial-evidence approach, a plaintiff must show the existence of facts that "create an inference of discrimination." *Id.* at 1248. This method of proof "arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or

difficult to acquire." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 436 (6th Cir. 2002) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996)). The familiar *McDonnell Douglas/Burdine* burden-shifting framework applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *DiCarlo*, 358 F.3d at 414. First, the plaintiff must make out a prima facie case of racial discrimination. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000). "After a plaintiff creates a presumption of discrimination by establishing a prima facie case, a defendant may rebut the presumption by proffering a legitimate, nondiscriminatory reason for its decision." *Id.* at 1021. If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual. *Id.*; *DiCarlo*, 358 F.3d at 414-15. Throughout this burden-shifting process, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *DiCarlo*, 358 F.3d at 415 (internal citation omitted).

a.     *Prima Facie Case*

To make out a prima facie case of race discrimination in the failure-to-promote context, a plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was considered for and denied the promotion; and (4) another employee of similar qualifications who was not a member of the protected class received the promotion. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006).

The only challenge Home Depot raised to the prima facie case was its argument in the district court that Halfacre was not qualified for the Paint Department Supervisor Position because his

schedule was not sufficiently flexible. The district court rejected this argument because Halfacre's affidavit stated that he is "able to work a fully flexible schedule at all times at Home Depot." *Halfacre*, 2005 WL 2114060, at *5. We are inclined to agree with the district court; regardless, Home Depot has abandoned this particular argument on appeal, noting only that it "contended below" that Halfacre could not establish a prima facie case and instead focusing its arguments on whether he can establish pretext. (Home Depot's Br. 23.) *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (noting that party abandoned issue on appeal by failing to present argument in brief). Accordingly, we assume that Halfacre has established a prima facie case.

b. *Articulated Reason for Adverse Action*

Because we assume Halfacre has established a prima facie case, the burden shifts to Home Depot to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 252. This burden is merely one of production, not persuasion; it involves no credibility assessment. *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 142 (2000); *see also Bd. of Trustees v. Sweeney*, 439 U.S. 24, 25 n.2 (1978) (noting that "the employer's burden is satisfied if he simply 'explains what he has done' or 'produces evidence of legitimate nondiscriminatory reasons'").

Home Depot has met this slight burden. Home Depot states that it did not promote Halfacre because it did not believe he had a fully flexible schedule in light of his employment with the Fire Department. Halfacre admits that Department Supervisors are required to be available to work a fully flexible schedule according to the needs of Home Depot's business. Additionally, it is undisputed that his job at the Fire Department involves a significant time commitment. Halfacre

mistakes this burden as one of persuasion, arguing on appeal that "Home Depot's proffered explanation is unworthy of credence." (Halfacre's Br. 19.) His arguments therefore fail, and Home Depot has satisfied its burden under *McDonnell Douglas*.

        c.     *Pretext*

Because Home Depot has met its burden to articulate a permissible reason not to promote Halfacre, the burden shifts back to him to show that this reason is a pretext for racial discrimination. *Burdine*, 450 U.S. at 253. A plaintiff may establish that an employer's stated reason for its employment action was pretextual by showing that the reason (1) had no basis in fact, (2) did not actually motivate the challenged conduct, or (3) is insufficient to explain the challenged conduct. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). If the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the plaintiff will fail to establish the basis for the decision was pretextual. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citation omitted); *Smith v. Chrysler*, 155 F.3d 799, 807 ("In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.").

Halfacre fails to show that Home Depot did not simply have a good-faith concern about Halfacre's schedule when it failed to promote him. As discussed above, Halfacre acknowledges that Department Supervisors must have fully flexible schedules and that his job with the Fire Department

requires three twenty-four-hour shifts out of every nine days. This provided a legitimate basis for Home Depot to believe his schedule was not amenable to the Department Supervisor position. Halfacre disputes this conclusion for two reasons, neither of which is persuasive.

First, Halfacre argues that Home Depot has accommodated other employees' schedules and that this shows the proffered concern about his schedule is "unworthy of credence." As discussed, however, each of the three examples he cites involve promoted employees who, like him, are black. Moreover, the only employee he identifies (besides himself) whom Home Depot did not promote because of scheduling concerns was white. As the district court correctly concluded, this shows only that "Home Depot inconsistently enforced its policy of requiring that Department Supervisor[]s have fully flexible schedules," but it "does not support the inference that Home Depot used the fact that Halfacre was employed by the Memphis Fire Department as a pretext for racial discrimination." *Halfacre*, 2005 WL 2114060, at *6.

Second, Halfacre argues that Home Depot never told him that concern about his Fire Department duties was the reason it did not consider him for the promotion. He says this also shows its proffered concerns were a pretext for racial discrimination. Halfacre testified, however, that Ginnie McDaniels, the Assistant Store Manager, told him in April 2003 that he "would make a great manager," and that Home Depot "would love to have [him] in management," but that she "had a concern about [his] fire department availability." (JA 99-100.) Home Depot's proffered reason for not promoting Halfacre is entirely consistent with these comments. Halfacre further notes that, in response to these comments, he requested a meeting with the store manager in which he could "address these issues" and explain that he "could do two jobs," but this meeting never occurred. (*Id.*

- 11 -

100.) Perhaps the best business decision would have been for Home Depot to have this meeting, but its failure to do so does not alter that it reasonably believed Halfacre's schedule could pose a problem. *Cf. Smith*, 155 F.3d at 807 ("In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned."). Indeed, even if this meeting occurred, Home Depot still could have fairly reasoned that—notwithstanding Halfacre's self-assessment of his ability to "do two jobs"—Halfacre's dual responsibilities did not make him a good candidate for the promotion. The district court properly granted summary judgment to Home Depot on this claim.

2.      Retaliation Claim

Halfacre also contends that Home Depot is liable under Title VII for retaliation because, he alleges, Home Depot gave him a lower evaluation rating in response to his discrimination charge. Title VII prohibits an employer from retaliating against an employee for filing an EEOC charge. 42 U.S.C. §§ 2000e-3(a) (forbidding an employer from discriminating against an employee because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII). Absent direct evidence of retaliation, as is the case here, retaliation claims are subject to the same *McDonnell Douglas* burden-shifting framework as discrimination claims. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563-64 (6th Cir. 2004). That is, if a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate reason for its employment action; if the defendant meets that burden, the plaintiff can prevail only by showing that the articulated reason is false or pretextual. *Wrenn v. Gould*, 808 F.2d 493, 500-01 (6th Cir. 1987).

To establish a prima facie case of retaliation, Halfacre must show (1) he engaged in activity protected by Title VII, (2) Home Depot knew he engaged in this activity, (3) Home Depot subjected him to an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse employment action. *Singfield*, 389 F.3d at 563. Home Depot does not contest that Halfacre meets the first two requirements.

Home Depot contends that Halfacre cannot show the third element of the prima facie case—that he was subject to an adverse employment action. The district court agreed, noting that this Circuit's law provided that an employee suffers an adverse employment action when there is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Halfacre*, 2005 WL 2114060, at *7 (quoting *Holt v. Morgan*, 79 F. App'x 139, 141 (6th Cir. 2003) (order)). By contrast, the district court explained, "'[a] performance evaluation that is lower than an employee feels is warranted is not an adverse employment action sufficient to state a claim of discrimination.'" *Id.* (quoting *Holt*, 79 F. App'x at 141). The district court therefore concluded that Halfacre failed to establish a prima facie retaliation case based on his lower performance-evaluation scores.

After the district court's decision in this case, the Supreme Court in *Burlington* addressed under Title VII (1) whether the alleged retaliation must be employment or workplace related, and (2) how harmful that action must be to constitute retaliation. 126 S. Ct. 2405. The plaintiff claimed that her employer unlawfully retaliated against her by changing her job responsibilities and suspending her for thirty-seven days without pay after she filed a gender-discrimination complaint with the

EEOC. *Id.* at 2410. The district court entered judgment in her favor after a jury trial, and this Court, en banc, upheld the decision unanimously but differed as to the proper standard to apply. *Id.*

The Supreme Court first rejected our requirement that there be a "link between the challenged retaliatory action and the terms, conditions, or status of employment," holding instead that "the scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.* at 2411, 2414.

The Court then explained the level of seriousness to which the harm must rise before it becomes actionable retaliation: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (citations and quotation marks omitted). "We speak of *material* adversity," the Court continued, "because we believe it is important to separate significant from trivial harms." *Id.* The purpose of Title VII's anti-retaliation provisions is to prohibit "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers," and "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* (citation and internal quotation marks omitted). The Court further explained that it purposely phrased the standard in general terms "because the significance of any given act of retaliation will often depend on the particular circumstances." *Id.* Thus, for example, a "supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about

discrimination." *Id.* (citing 2 EEOC 1998 Manual § 8, p 8-14.)

Applying these standards, the Court concluded that a jury could find that assigning the plaintiff to less-desirable job duties and suspending her without pay (even though later reinstating her with backpay) amounted to materially adverse acts in retaliation for filing the EEOC complaint, and the Court accordingly affirmed the judgment in her favor. *Id.* at 2417.

Under *Burlington*, the district court's analysis is now suspect. The district court stated, as a categorical matter, that "'[a] performance evaluation that is lower than an employee feels is warranted is not an adverse employment action sufficient to state a claim of discrimination.'" *Halfacre*, 2005 WL 2114060, at *7 (quoting *Holt*, 79 F. App'x at 141). But such an evaluation could—in certain circumstances—"dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S. Ct. at 2415. There is reason to believe that is the case here.

Halfacre's performance evaluations changed significantly after he filed his EEOC discrimination charge. Before filing the charge, Halfacre's performance evaluations were generally stellar. In 2002, he received two evaluations, and both rated him at the highest of four levels for overall performance ("outstanding") and for potential ("high potential"). And in the breakdown of fourteen separate categories on which these overall grades were based, he never had a score lower than the top two grades of "outstanding" and "achiever." But in 2003, after filing his EEOC charge, his overall performance grade dropped to the third out of four levels ("performer") and his potential grade dropped to the second out of four levels ("promotable"). Of the fourteen categories underlying these grades, his September evaluation lowered him to the third of four levels ("performer") in nine

categories and additionally scored him the lowest level ("improvement required") for attendance. The re-assessment in December was similar, raising only one of the nine "performer" scores up to the second level of "achiever."

Home Depot contends that the negative evaluation comments and scores are nothing more than constructive criticism. That characterization may be accurate. But the relevant question—at least in this portion of the inquiry—is not whether the comments and resulting lower grade are "constructive" or even justified at all; it is simply whether they are materially adverse. Home Depot's arguments *justifying* these lower grades are fodder to show the lower grades had a reasonable basis and therefore (i) the filing of the discrimination charge did not *cause* the lower grades, or (ii) the basis was not a mere *pretext* for retaliation, but those are separate inquiries—inquiries that the district court has yet to address.

If the Supreme Court views excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement as materially adverse conduct, *see Burlington*, 126 S. Ct. at 2415-16, then markedly lower performance-evaluation scores that significantly impact an employee's wages or professional advancement are also materially adverse. The question is whether that is the case here. Halfacre testified, based on his experience, that after the (lower-scored) 2003 evaluations, he received a fifty-five-cent-per-hour raise and that had he scored overall as "achiever"—still a level lower than the rank he received before filing his discrimination charge—he would have received a raise of seventy-five cents to one dollar per hour. Moreover, one of the evaluations' main purposes is to establish promotion potential; it specifically includes that category on the evaluation form. But with limited evidence on the *extent to which*

Halfacre's lower evaluations *actually impacted* his wages or promotion potential, however, we believe the district court should allow further discovery on this point, so that it can fully assess this question in light of *Burlington*.[1]

Remanding to the district court on this question is particularly appropriate because the remaining issues should also be remanded. In the parties' battle over this single prong of the prima facie case, they fail to address separately (1) the final prima facie prong (causation); and (2) the remaining aspects of the *McDonnell Douglas* framework, namely, (a) whether Home Depot has articulated a legitimate reason for grading Halfacre lower on his evaluations, and (b) whether Halfacre can establish the reason was a pretext for retaliation. Recently, in a similar situation, we remanded to the district court to consider these issues. *See Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 724, 737 & n.4 (6th Cir. 2006) (concluding that plaintiff established a prima facie case for retaliation and, although noting that ordinarily the Court would be required to consider the remaining *McDonnell Douglas* elements, remanding for further proceedings where "neither party's brief addresse[d] any argument beyond the prima facie case"). We think that is the wisest course of action here, especially because the district court never addressed these issues.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** to the

---

[1]In addition to his primary argument regarding the performance evaluations, Halfacre also suggests that Home Depot retaliated against him by ostracizing him after he filed his discrimination charge. (*E.g.,* Halfacre's Br. 11 (asserting that "management stopped talking to Halfacre, making him feel like a man without a country").) But Halfacre would have to establish that management's conduct was more than "simple lack of good manners," *Burlington*, 126 S. Ct. 2415, and he provides no indication that this was the case.

district court for further proceedings consistent with this opinion.