*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0256P (6th Cir.)
File Name: 03a0256p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

CINDY AKERS,
　　　　*Plaintiff-Appellant,*

　　　　*v.*　　　　　No. 02-5037

DONALD ALVEY and
KENTUCKY CABINET FOR
FAMILIES AND CHILDREN,
　　　　*Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00221—John G. Heyburn II, Chief District Judge.

Argued: June 20, 2003

Decided and Filed: July 29, 2003

Before: BOGGS and GILMAN, Circuit Judges; DOWD,
　　　　District Judge.*

———————————

* The Honorable David D. Dowd, Jr., United States District Judge for
the Northern District of Ohio, sitting by designation.

———————————

### COUNSEL

**ARGUED:** Kenneth L. Sales, SALES, TILLMAN & WALLBAUM, Louisville, Kentucky, for Appellant. Schuyler J. Olt, PEDLEY, ZIELKE & GORDINIER, Louisville, Kentucky, Edward L. Lasley, CONLIFFE, SANDMANN & SULLIVAN, Louisville, Kentucky, for Appellees. **ON BRIEF:** Kenneth L. Sales, SALES, TILLMAN & WALLBAUM, Louisville, Kentucky, for Appellant. Schuyler J. Olt, PEDLEY, ZIELKE & GORDINIER, Louisville, Kentucky, Edward L. Lasley, Richard M. Sullivan, CONLIFFE, SANDMANN & SULLIVAN, Louisville, Kentucky, for Appellees.

　　GILMAN, J., delivered the opinion of the court, in which BOGGS, J., joined. DOWD, D. J. (pp. 15-16), delivered a separate opinion concurring in the judgment.

———————————

### OPINION

———————————

　　RONALD LEE GILMAN, Circuit Judge. Cindy Akers, a former family services worker with the Kentucky Cabinet for Families and Children, brought suit in federal district court against the Cabinet and her immediate supervisor, Donald Alvey, for sexual harassment. Specifically, Akers brought a claim under 42 U.S.C. § 1983 against Alvey in his official and individual capacities, claims under Title VII against the Cabinet for discrimination, hostile work environment, and retaliation, and a common law claim for the tort of outrage against both Alvey and the Cabinet. Akers alleges that Alvey engaged in pervasive sexual misconduct towards her, that the Cabinet acquiesced in that conduct, and that the Cabinet retaliated against her when she complained.

Alvey and the Cabinet both moved for summary judgment. The district court dismissed all of the claims against Alvey, as well as Akers's discrimination, retaliation, and tort-of-outrage claims against the Cabinet. Akers's hostile-work-environment claim, however, was permitted to go forward.

Pursuant to an agreed order, the resolution of all of the dismissed claims was deemed final and immediately appealable by the district court. On appeal, Akers challenges the district court's grant of summary judgment for Alvey and its partial grant of summary judgment for the Cabinet. For the reasons set forth below, we **REVERSE** the judgment of the district court as to Akers's tort-of-outrage claim against Alvey, **AFFIRM** the judgment of the district court as to Akers's remaining claims, and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

The Cabinet hired Akers as a family services worker at the Grayson County office in July of 1997. On August 1, 1998, Alvey was promoted to be the supervisor of the same office. Akers first reported Alvey's allegedly inappropriate behavior to the Cabinet 18 days later. According to Akers's complaint, Alvey had engaged in pervasive, sexually offensive behavior, including the making of lewd gestures with his tongue and hand while moaning, commenting daily about Akers's physique (such as "nice ass"), getting very close to Akers and attempting to look down her blouse, questioning Akers extensively about masturbation and her sex-life with her boyfriend, expressing in front of other employees that he would like to have sexual intercourse with Akers, commenting to Akers about her coworkers' sexual histories and physiques, commandeering Akers's computer to send sexually explicit e-mail messages, and describing his last episode of oral sex in great detail. Akers alleged that Alvey engaged in over 30 acts of inappropriate behavior in a two-and-a-half month period.

The Cabinet conducted a two-week investigation into Akers's complaint, interviewed Akers, Alvey, and ten others, and found that her sexual-harassment claims were unsubstantiated. Akers however, was promptly removed from Alvey's supervision at the conclusion of the investigation. She alleges that during the time that the Cabinet was investigating her complaint, Alvey engaged in retaliatory conduct by refusing to speak to her, instructing other employees not to associate with her, withholding her mail and inter-office memoranda, and criticizing the way she handled her cases.

In January of 1999, Akers was transferred to the Hardin County office of the Department for Community Based Services to work as a domestic violence and child abuse investigator. According to Akers, she was never accepted in her new office because of her ongoing complaint against Alvey and, after "six months of antagonism," she felt that she had no choice but to resign her position. Akers sought psychological counseling for depression after leaving her job.

She reapplied with the Cabinet several months later for a position in the Richmond office, where she would have been supervised by Linda Miller. Although Miller called Akers to inform her that Miller would be recommending Akers for the job, Miller later changed her mind after receiving negative recommendations from Akers's former supervisors and coworkers, including Alvey, and upon learning of Akers's lawsuit.

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(1)(3), and 1367(a). Although a partial grant of summary judgment is not ordinarily appealable, the district court entered an agreed order under Rule 54(b) of the Federal Rules of Civil Procedure, rendering final and appealable the

judgment on all dismissed claims. Rule 54(b) was enacted as "a response to the need created by the liberal joinder provisions of the Federal Rules of Civil Procedure to revise 'what should be treated as a judicial unit for purposes of appellate jurisdiction.'" *Corrosioneering v. Thyssen Envtl. Sys.*, 807 F.2d 1279, 1282 (6th Cir. 1986). The Rule "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Id.* (internal quotation marks omitted). The determination of whether to allow for an appeal pursuant to Rule 54(b) is a matter left to the sound discretion of the district court. *Id.*

The Rule itself simply states that the district court must find that there is no just reason for delay of the appeal. Fed. R. Civ. P. 54(b). This court, however, has previously indicated that in order to avoid a finding of abuse of discretion in the certification of an appeal pursuant to Rule 54(b), the "district court should do more than just recite the Rule 54(b) formula of 'no just reason for delay.'" *Id.* As the Supreme Court explained:

> It is essential, however, that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.

*Protective Comm. v. Anderson*, 390 U.S. 414, 434 (1968).

This court, in *Corrosioneering,* set forth the following "nonexhaustive list" of factors to consider:

(1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that

the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the factors of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

*Corrosioneering*, 807 F.2d at 1283 (quoting *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)).

The district court's order in this case was in many respects the bare-bones certification that this court condemned in *Corrosioneering*. No analysis of the above factors was undertaken, and the only justification stated for declaring that there was "no just reason for delay" was a statement that the parties "hav[e] agreed that the outstanding issues with regard to dismissal of a claim against Alvey and the claims against the Cabinet would more economically be handled by an appellate decision prior to trial . . . ." Because this case has already been briefed and argued on appeal, however, the scales of judicial economy are now tipped in favor of disposing of the appeal on the merits. But if the jurisdictional issue had been spotted sooner, we would likely have remanded the case in order for the district court to explicitly evaluate the *Corrosioneering* factors.

**B. Standard of review**

We review a district court's grant of summary judgment de novo. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## C.   Akers's tort-of-outrage claim against Alvey

The district court dismissed Akers's tort-of-outrage claim against Alvey, concluding that "[w]hile Alvey's conduct and that attributable to the Cabinet might be considered crude and completely inappropriate, it does not rise to a level of conduct which is 'atrocious and intolerable' as required by Kentucky law." Under Kentucky law, "[i]n order to recover [for the tort of outrage], the plaintiff must show that defendant's conduct was intentional or reckless, that the conduct was so outrageous and intolerable so as to offend generally accepted standards of morality and decency, that a causal connection exists between the conduct complained of and the distress suffered, and that the resulting emotional stress was severe." *Brewer v. Hillard,* 15 S.W.3d 1, 6 (Ky. Ct. App. 1999).

There is no question in this case that Alvey's behavior was intentional, and thus the first element of the tort of outrage is satisfied. Akers maintains that the district court erred in holding that Alvey's conduct did not reach the level of outrageousness required by the second element. In assessing this element, we must view the evidence in the light most favorable to Akers and determine whether this case "is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Restatement (Second) of Torts § 46 cmt. d (1965) (applied by the Kentucky Court of Appeals in *Brewer,* 15 S.W.3d at 6). In our opinion, this is just such a case.

Alvey's behavior went far beyond the sexual jokes, comments, and innuendos that this court has previously found insufficient to withstand a motion for summary judgment on a tort-of-outrage claim. *Wathen v. General Electric Co.*, 115 F.3d 400, 407 (6th Cir.1997) (applying Kentucky law). Any one of the particular incidents complained of, taken in isolation, might not reach the level of outrageousness required by Kentucky law to survive summary judgment. But taken together, Alvey's pervasive behavior, as alleged by Akers, was outrageous. At the very least, this is a case where "reasonable men may differ" and, as such, "it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts § 46 cmt. h (1965) (§ 46 was adopted by the Kentucky Supreme Court in *Craft v. Rice*,  671 S.W.2d 247, 251 (Ky. 1984)).

Alvey argues, as his last line of defense on this claim, that the distress suffered by Akers, if any, was not caused by Alvey's behavior and was not severe. In both her verified complaint and her deposition testimony, however, Akers maintains that she suffered severe emotional distress as a result of Alvey's outrageous conduct. Akers specifically testified that she experienced depression and sought psychological counseling shortly after leaving her job with the Cabinet. Although the evidence of emotional distress may be sparse, we believe that it is sufficient to send the issues of causation and severity to the jury.

In sum, we find that Akers has satisfied all of the elements of her tort-of-outrage claim against Alvey as set forth in *Brewer*, 15 S.W.3d at 6. We therefore  reverse the district court's grant of summary judgment on this claim.

## D.   Akers's tort-of-outrage claim against the Cabinet

The Cabinet argues that Akers's tort-of-outrage claim against it was properly dismissed because the Cabinet is

protected from such a claim by the Eleventh Amendment to the United States Constitution. This issue was not addressed by the district court, however, because it held that the Cabinet's conduct was not outrageous as a matter of law.

Akers cites the case of *Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 963 (6th Cir. 2002), for the proposition that an entity's defense of sovereign immunity will be deemed waived absent evidence in the record of how a state defines the entity, what degree of control the state has over the entity, and how the entity is funded. According to Akers, the record in this case is bereft of such evidence, resulting in a waiver of the Cabinet's sovereign immunity defense. In *Gragg*, however, the defendants failed to identify the claims to which the sovereign immunity defense applied, failed to argue immunity before the district court, and included only a single paragraph addressing the immunity argument in their appeal. The Cabinet in the present case, on the other hand, raised the argument in the district court and has briefed it fully on appeal. As a result, *Gragg* is easily distinguishable and Akers's waiver argument is without merit. We therefore affirm the district court's grant of summary judgment as to Akers's tort-of-outrage claim against the Cabinet on the grounds that such a claim is barred by sovereign immunity.

**E.   Akers's retaliation claim against the Cabinet**

In order to establish a claim of retaliation, Akers must prove that (1) she engaged in an activity protected by Title VII, (2) the exercise of that protected right was known to the Cabinet, (3) the Cabinet thereafter took an employment action adverse to Akers, or that Akers was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). The district court held that although Akers satisfied prongs (1), (2), and (4) of this test, she failed to establish that

she had suffered a materially adverse employment action under prong (3).

In order to establish an adverse employment action, Akers must show a significant change in her employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, a significant change in benefits, or other factors unique to her particular situation. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000). Akers alleges three employment actions that she contends are materially adverse: (1) transfer to a different office, (2) retaliatory harassment by Alvey in the form of increased criticism, withholding her mail, ignoring her, and encouraging her coworkers to ostracize her, which resulted in her "social death" within the office, and (3) the Cabinet's refusal to rehire her following a negative recommendation by Alvey. We will now examine each of these contentions in turn.

**1.   *Akers's transfer to the Hardin County office***

Even assuming that Akers was involuntarily transferred to the Hardin County office, as she alleges, she failed to demonstrate how this transfer was materially adverse to her. She did not suffer a decrease in pay, her job duties were not significantly changed, and the transfer actually reduced Akers's roundtrip commute from her home by 60 miles per day. We thus agree with the district court that Akers's transfer was not a materially adverse employment action. *See Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996) (holding that a plaintiff failed to establish that her transfer and change in job title was a materially adverse employment action, reiterating "that reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

## 2.    *Retaliatory harassment by Alvey*

Although the district court failed to consider whether Alvey's post-complaint harassment was retaliatory, this court has previously held that "severe or pervasive supervisor harassment" following a sexual-harassment complaint can constitute retaliation for the purposes of a Title VII action. *Morris*, 201 F.3d at 792. Because the court's decision in *Morris* was an extrapolation of Supreme Court precedent allowing a Title VII action to be based upon severe or pervasive supervisory harassment in the sexual-harassment context, the standard for "severe or pervasive" harassment is "the same in the retaliation context as in the sexual and racial discrimination contexts." *Broska v. Henderson*, 2003 WL 21518733, *4 (June 30, 2003).    Under this standard, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). As this court noted in *Broska,* "this test has both an objective and a subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive." *Broska*, at *4.

The Cabinet responds to Akers's retaliatory harassment claim by arguing that Alvey was removed as Akers's supervisor immediately following the conclusion of its investigation of Akers's complaint to the Cabinet, and that any harassment that may have occurred following Akers's complaint was not severe or pervasive enough to support a retaliation claim. All of the incidents giving rise to Akers's complaint about retaliation occurred during the two-week period that the Cabinet took to investigate her charges. In *Morris,* the supervisor in question engaged in retaliatory conduct that was much more severe and pervasive than that alleged in this case, including calling the plaintiff over 30 times for the sole purpose of harassing her, sitting outside her office staring in her window, and throwing nails onto her

home driveway on more than one occasion. *Id.* at 793. The court in *Morris* distinguished that case from the "simple teasing, offhand comments, and isolated incidents that [the Supreme Court in] *Faragher* indicated did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment." *Id.* at 793.

Alvey's alleged post-complaint conduct (i.e., ignoring Akers, encouraging her coworkers to do the same, criticizing her work, and withholding her mail) falls somewhere in between the egregious conduct in *Morris* and "simple teasing" or "offhand comments." The alleged retaliation was confined to the two weeks during which the Cabinet was diligently investigating Akers's complaint and despite the Cabinet's circulation of a memo in the Grayson County office instructing that no retaliation would be tolerated. Due to the short duration and relatively mild nature of the post-complaint harassment, as well as the Cabinet's directive prohibiting retaliatory conduct, we do not believe that there is sufficient evidence for a jury to find that Alvey's alleged harassment reached the level of "severe or pervasive" conduct required by *Morris* for a retaliation claim.

## 3.    *The Cabinet's refusal to rehire Akers*

Akers's final basis for her retaliation claim is the Cabinet's decision not to rehire her for a different position four months after her resignation. Even assuming that Akers presented a prima facie case of retaliation based upon Alvey's alleged input into the decision, the Cabinet articulated a legitimate, nondiscriminatory reason for its decision not to rehire Akers; namely, poor reviews from her coworkers and other supervisors, including Akers's supervisor during the few months that she was employed in the private sector. The Cabinet thus contends that Alvey's alleged retaliatory input was immaterial to its decision not to rehire her. Akers has failed to rebut this contention. Because Akers has not shown that this proferred legitimate reason was pretextual, we agree

that the Cabinet's refusal to rehire Akers does not support her retaliation claim.

In sum, none of Akers's allegations are sufficient to establish a materially adverse employment action by the Cabinet. The district court therefore did not err in granting summary judgment as to Akers's retaliation claim.

## F.   Akers's § 1983 claim against Alvey

Finally, Akers brought a § 1983 claim against Alvey in his individual and official capacities. Section 1983 liability, as alleged by Akers's complaint, is premised upon liability under Title VII. Title VII, in pertinent part, provides that it is unlawful for an employer to discriminate against an individual on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). The district court concluded that for all practical purposes, the two claims are the same. The Sixth Circuit has held that where "there is liability under Title VII, there should be liability under § 1983. Similarly, if there was no discriminatory intent, there cannot be liability under either Title VII, on a disparate treatment theory, or § 1983." *Grano v. Dep't of Dev.*, 637 F.2d 1073, 1082 (6th Cir. 1980). Akers's **§** 1983 claim was thus analyzed by the district court as a Title VII claim.

An employer is defined under Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). Akers relies on the "agent" language of this definition and argues that Alvey should be considered an "employer" for Title VII purposes. The district court, however, ruled that Alvey could not be held individually liable under Title VII, relying on this court's decision in *Wathen v. General Electric Co.*, 115 F.3d 400 (6th Cir. 1997).

In *Wathen*, this court held that despite the express use of the word "agent" in the statute, Title VII does not create individual liability for individuals in supervisory positions such as Alvey's. Because *Wathan* is controlling authority, we affirm the district court's grant of summary judgment as to Akers's § 1983 claim against Alvey. *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

## III. CONCLUSION

For all the reasons set forth above, we **REVERSE** the judgment of the district court as to Akers's tort-of-outrage claim against Alvey, **AFFIRM** the judgment of the district court as to Akers's remaining claims, and **REMAND** the case for further proceedings consistent with this opinion.

_____

**CONCURRENCE**

_____

DAVID D. DOWD, JR., District Judge, concurring in the judgment. Although I reluctantly conclude that the majority has rightly decided this case in the face of current binding Sixth Circuit precedent, I write separately to respectfully voice my view that *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000), relied upon to reject Akers's retaliation claim, was wrongly decided.

*Morris* does not, in my view, adequately recognize that Title VII identifies and prohibits two discrete wrongs: discrimination and retaliation. In the former category, when it comes to discrimination based on sex, the Supreme Court has distinguished between *quid pro quo* claims and hostile environment claims, *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986), and has clarified that, to be actionable, hostile environment claims require harassment that is "severe and pervasive." *Id.* Under the guise of statutory construction, and applying the two relatively recent Supreme Court decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), *Morris* has incorporated that "severe and pervasive" standard into retaliation claims. I believe this is wrong.

While it is a reasonable interpretation of the statute, in light of people's varying sensitivities, to require harassment to be severe or pervasive, that concept is inconsistent with the concept of retaliation.

With respect to harassment: some people are highly offended by even the slightest off-color behavior in the workplace; others have a much higher tolerance for the very same behavior. In other words, there is significant gradation in the area of harassment and, often, whether there is or is not

harassment has to do with personal perception. Courts would be clogged with lawsuits if every single off-color joke told in the presence of a highly sensitive person were actionable under Title VII or, as is more often the case, if behavior that has actually been tolerated or even welcomed and/or participated in by an individual suddenly becomes a weapon against the employer when something in the workplace does not go that individual's way. The "severe and pervasive" standard helps to assure at least a little consistency of interpretation and protects against this kind of abusive application of the statute.

On the other hand, retaliation is not a matter of perception or gradation. It is, rather, much like an electric light, which is either "on" or "off." One either *is* or *is not* retaliating. Typically, this would be, and should be, a fact call for a jury. Of course, in the wake of *Morris*, now, by definition, one "*is* retaliating" only if one's behavior against the Title VII complainant is "severe and pervasive." I can perceive no reason for this interpretation of Title VII. I *can* see a reason to require severity and pervasiveness before a working environment can be found to be truly "hostile;" I *cannot* see a reason for applying that standard to retaliation. Nonetheless, that is, unfortunately, the law in this circuit.

Therefore, I am constrained to concur in the judgment.