RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TANGANEKA L. PHILLIPS,

                              *Plaintiff-Appellant*,

     *v.*

UAW INTERNATIONAL; BRIAN JOHNSON; DAVE KEGALS,

                              *Defendants-Appellees*.

No. 16-1832

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-10525—David M. Lawson, District Judge.

Argued: March 15, 2017

Decided and Filed: April 12, 2017

Before: MERRITT, COOK, McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** John J. Bursch, BURSCH LAW PLLC, Caledonia, Michigan, for Appellant. Patrick J. Rorai, MCKNIGHT, CANZANO, SMITH, RADTKE & BRAULT, P.C., Royal Oak, Michigan, for Appellees. Susan R. Oxford, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Nanette L. Cortese, THE CORTESE LAW FIRM, Bingham Farms, Michigan, for Appellant. Patrick J. Rorai, MCKNIGHT, CANZANO, SMITH, RADTKE & BRAULT, P.C., Royal Oak, Michigan, Ava Barbour, UAW INTERNATIONAL, Detroit, Michigan, for Appellees. Susan R. Oxford, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

     McKEAGUE, J., delivered the opinion of the court in which COOK, J., joined. MERRITT, J. (pp. 8–9; app. 10–13), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.    Samuel Gompers, founder of the AFL, wrote that "[w]herever trade unions are most firmly organized, there are the rights of the people most respected." SAMUEL L. GOMPERS, LABOR AND THE COMMON WELFARE (1919).   But Gompers wasn't quite right if Tanganeka Phillips's claims are true; she alleges that one of the largest unions in North America discriminated against her on the basis of race.   Specifically, she alleges that UAW International created a hostile work environment, actionable under Title VII and the Michigan Elliot-Larsen Civil Rights Act (ELCRA).    The district court granted summary judgment for the defendants on the basis that Phillips's Title VII hostile work environment claim can only be brought against an employer, not a union, and that UAW International was not Phillips's employer.  We affirm on other grounds.

**I**

Tanganeka L. Phillips worked at the MGM Grand Detroit casino from June 1999 until September 2015.   Beginning in 2001, Phillips belonged to Local 7777, a UAW International affiliate.   In 2002, she became the Local's chairperson.   This case largely derives from her interactions in that role with two employees of UAW International, Brian Johnson and Dave Kagels.   Phillips, who is African-American, asserts that Johnson's and Kagels's conduct created a racially hostile work environment in violation of both Title VII and the ELCRA.

To support her claim, Phillips describes a smattering of offensive conduct committed by Johnson and Kagels from 2012 to 2014.   First, Phillips alleges that Kagels listed three union representatives by name and said he would fire them all if he could.   All three people Kagels listed were black, so Phillips considered the statement racist.  R. 34-2, Phillips Tr., PID 314 ("To me that was racially [sic] because he only singled out the black reps.").   Next, Phillips says Johnson told Phillips "[w]e need to put a black on staff to calm it down, and was [Phillips] interested?"  *Id.* at PID 314.   Phillips also describes an occasion when, addressing Dwight Braxton (another union member) in Phillips's presence, Johnson said "oh, because you're big

and black. You're her bodyguard, I'm supposed to be afraid of you." *Id.* at PID 312. Phillips also alleges that Johnson once said that the "problem with the Union was that there are too many blacks in the union." R. 39-6, Phillips Aff., PID 919; *see also* R. 39-5, Braxton Tr., PID 913. Otherwise, the allegations are more general: that Johnson often behaved violently, that he made frequent racial comments, and that he spoke in a condescending tone when dealing with black union members as compared to white members. R. 39-2, Phillips Tr., PID 894; R. 39-4, Catinella Tr., PID 910; R. 34-2, Phillips Tr., PID 311–12 ("Well, he said so many racial remarks to me it's kind of hard to remember . . . he said so many of them."). But Phillips also testified that she met with Johnson "very rarely." R. 34-2, Phillips Tr., PID 309.

Additionally, and perhaps most troubling, Phillips claims that, in a 2013 meeting she attended with Braxton, Johnson demanded to know the race of each grievant and then separated the grievances into piles based on whether they were filed by "white" or "black" union members. Phillips says that, before abruptly ending the meeting, Johnson rubber-banded the two piles and said he intended to withdraw the grievances filed by African-American union members.

Finally, Phillips also testified that, to her knowledge, Johnson actually did withdraw those grievances. But the record belies that claim. *See* R. 35-3, McIntosh Aff., PID 686–97 (memorializing that grievances Phillips says Johnson dismissed based on race were not dismissed by the union). For their part, Johnson and Kagels deny all of the alleged misconduct.

Phillips's complaint alleges that UAW International, Johnson, and Kagels violated Title VII and the ELCRA.[1] The district court granted the defendants' motion for summary judgment and dismissed the case. This appeal followed in which the EEOC filed a brief as *amicus curiae* in support of Phillips.[2]

---

[1]The complaint also included claims against MGM and Rozell Blanks, which have been dismissed by stipulation.

[2]The dissent believes we "unfairly interpret and distort the facts," so it attaches the facts section from the EEOC's amicus brief. The record shows, however, that instances the EEOC listed as separate occurrences were actually just Phillips's multiple characterizations of the same event. No matter, our holding would be the same under the EEOC's slightly different retelling.

**II**

We review the district court's grant of summary judgment de novo.  *Romans v. Mich. Dep't of Human Services*, 668 F.3d 826, 835 (6th Cir. 2012).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view evidence and draw all inferences in favor of the non-moving party to determine whether the plaintiff has presented sufficient evidence from which a jury could reasonably find in its favor.  *See Romans*, 668 F.3d at 835.  We "may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied."  *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016).

**A**

Title VII prohibits both employers and labor unions from discriminating on the basis of race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2(a)–(c).  Here, Phillips alleges the union violated Title VII by creating a hostile work environment on the basis of race— a claim she brings against the union in its capacity as *employer* under § 2000e-2(a) and in its capacity as *union* under § 2000e-2(c).  Phillips' first theory presents a run-of-the-mill agency question: is Phillips an employee of UAW International?  But her second theory is novel; this court has never addressed whether § 2000e-2(c) covers hostile work environment claims brought against a union *qua* union.

And there is a question there—perhaps a close one—because Congress wrote Title VII with different language in the relevant employer and union subsections.  Only in the employer subsection is there a specific prohibition on discrimination with respect to "compensation, terms, conditions, or privileges of employment."  *Id.* § 2000e-2(a).  Importantly, *that* language is the statutory origin of Title VII hostile work environment claims.  *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2440–41 (2013); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).  That this claim-originating language is missing from Title VII's union subsection was enough for the district court to conclude that unions are not liable for such claims.  That is, because Title VII's "terms and conditions"

language is the basis for hostile work environment claims but absent from Title VII's union subsection, the district court held that unions *qua* unions are not liable under Title VII for hostile work environment claims. *See* R. 47, Dist. Ct. Op., PID 1172.

But there are good reasons to question the district court's reading. For one thing, at least one other circuit has come to the opposite conclusion. *See Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1102 (8th Cir. 2001). For another, applying the usual tools of statutory interpretation to § 2000e-2(c)(1)'s text might support a reading that Title VII prohibits unions from creating hostile work environments, just like it does for employers.

However, whether unions can be held liable for a Title VII hostile work environment claim is only at issue if Phillips has made the adequate showing that there was a hostile work environment. She hasn't. Thus, we need not reach either the more mundane agency question or the more interesting interpretive question Phillips' Title VII claims raise. In the interests of judicial economy, we decline to. *Cf. Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

**B**

A hostile work environment claim requires proof that (1) plaintiff belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action. *See Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078–79.[3] The district court found Phillips had created a genuine issue of material fact as to these showings. *See* R. 47, Dist. Ct. Op., PID 1167–69. We review de novo. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 700, 707–08 (6th Cir. 2007). Because it is dipositive, we begin with the fourth factor.

On summary judgment, we look at the totality of the alleged race-based harassment to determine whether it was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011) (alteration in original) (quoting *Harris,* 510 U.S. at 21).

---

[3]The elements are substantially the same for Phillips's ELCRA claim. *See Quinto v. Cross & Peters Co.*, 451 Mich. 358, 368–69 (1996).

"In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal citation omitted). Significantly, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Thus, occasional offensive utterances do not rise to the level required to create a hostile work environment because, "[t]o hold otherwise would risk changing Title VII into a code of workplace civility." *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008) (internal quotation marks omitted).[4]

Accordingly, this court has found even offensive and bigoted conduct insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough to satisfy the claim's requirements. *See, e.g.*, *Williams*, 643 F.3d at 506, 513 (finding no hostile work environment where defendant "call[ed] Jesse Jackson and Al Sharpton 'monkeys' and [said] that black people should 'go back to where [they] came from'" among other racist comments); *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 432 (6th Cir. 2014) (no hostile work environment where plaintiff was subjected to race-based comments and his supervisor stood behind him and made a noose out of a telephone cord); *Clay*, 501 F.3d at 707–08 (fifteen racially-motivated comments and instances of disparate treatment over a two-year period were isolated, not pervasive, and therefore not actionable under Title VII). We find the same here.

---

[4]The dissent says that whether the conduct was severe or pervasive enough to constitute a hostile work environment is "quintessentially a question of fact" and so should be left for the jury. It cites *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298 310–11 (6th Cir. 2016) for that proposition. But *Smith* (which affirmed the denial of a defendant's motion for judgment as a matter of law) did not strip this court's authority to determine that offensive conduct is not severe or pervasive enough to constitute a hostile work environment at summary judgment nor reverse course on decades of precedent in which the court has done just that. *See e.g.*, *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878–79 (6th Cir. 2013); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 518 (6th Cir. 2009); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005); *Akers v. Alvey*, 338 F.3d 491, 499 (6th Cir. 2003); *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996); *see also Graves v. Dayton Gastroenterology, Inc.*, 657 F. App'x 485, 489 (6th Cir. 2016); *Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 298 (6th Cir. 2015). That list could go on, but we believe it's sufficient to prove the point: we continue to apply "standards for judging hostility [that] are sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher*, 524 U.S. at 788 (1998) (internal quotation marks removed).

Phillips specifically identifies several racially offensive statements made over a period of two years: (1) Kagels listing union reps he would fire; (2) Johnson saying that they needed "another black on staff"; (3) Johnson's big-black bodyguard comment; and (4) Johnson's "too many blacks" in the union comment. Phillips also alleges that, in a meeting she attended with Braxton, Johnson separated grievances based on race and said he would dismiss them.

These incidents, if true, are offensive and condemnable. But they are not actionable as a hostile work environment. Like in *Williams*, *Reed*, *Morris*, and *Clay*, the incidents were isolated and not pervasive or severe enough to alter the terms and conditions of Phillips's employment. As that line of decisions shows, this court has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory. The misconduct alleged here—a handful of offensive comments and an offensive meeting over a two-year period—does not clear that bar.[5]

In short, no matter who can be held liable for hostile work environment claims under Title VII, Phillips fails to create a genuine issue of material fact that she was subjected to one. Thus, defendants are entitled to summary judgment on her Title VII claims. Her ELCRA claims fail under the same analysis. *See Quinto*, 451 Mich. at 368–72.

Finally, we affirm the district court's denial of Phillips's motion for reconsideration. On appeal, she does not provide any analysis, explanation, or case law in support of reversal. Such conclusory arguments are deemed waived. *See Kuhn v. Washetaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013).

### III

Thus, for the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of the defendants.

---

[5]Additionally, Phillips' testimony that she rarely interacted with Johnson limits any weight afforded her vague allegation that he made "many" offensive comments and the record flatly contradicts her claim that grievances were actually dismissed based on race.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting.  My colleagues ignore the fact that the district court found that if the Title VII statute covers unions, plaintiff Phillips has clearly made out a case against the union of creating a hostile, racially discriminatory work place.  Based on the Eighth Circuit's opinion in *Dowd v. United Steelworkers of America*, 253 F.3d 1093 (8th Cir. 2001), and similar opinions from other circuits, my colleagues are not now asserting that the Title VII statute's work place environment provisions do not cover labor organizations; but rather they unfairly interpret and distort the facts so as to undermine the protection of racial minorities in the work place that the statute was passed to create.  The result of this ploy is to wipe out the work place benefits for racial minorities and the improved work place environment that Congress intended.

In ruling that the Jim Crow-like conduct of the union agents here "would permit a jury to conclude that the defendants created a hostile work environment based on race," the district court quoted this court's decision last year that "whether harassment was so severe and pervasive as to constitute a hostile work environment [is] 'quintessentially a question of fact'" that a jury should decide.  *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298, 310-11 (6th Cir. 2016).  My colleagues' treatment of the issue not as a question of fact but as a question of law not only violates last year's precedent but precedents created over the entire 220-year history of the Seventh Amendment requiring factual disputes in civil cases to be tried by a jury in cases at law. This is a case at law, not equity, and the jury should hear the testimony of the witnesses in accordance with the legal tradition established by our Founders.  It may shield against employers, unions, and judges who may be insensitive to the rights of racial minorities in the work place.

In March 2014, Phillips filed a Title VII charge against the UAW with the Equal Employment Opportunity Commission, and the EEOC, after investigating, issued a right to sue letter to Phillips in January 2015.  The EEOC has now filed with this court in the form of an amicus brief a statement of the facts its investigation revealed.  The EEOC's recitation of the

facts are attached as an Appendix. Surely if those facts were proved to the jury, a jury verdict for Phillips should not be set aside as based on insufficient evidence, as my colleagues assert. Therefore, I respectfully dissent.

———————————

**APPENDIX**

———————————

**STATEMENT OF FACTS**

The MGM Grand Casino in Detroit hired Plaintiff Tanganeka (Tina) Phillips, who is African American, as a cage cashier in 1999. District Court Record Number (R.) 34-2, PgID#303 (Phillips 11/13/2014 Deposition (Dep.). She became a member of Local 7777 (Local), an affiliate of the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW (UAW), in 2001. *Id.* Members who joined the Local were automatically members of the UAW as well. Soon after joining the union, Phillips became the MGM Casino Chairperson for the Local, serving on the Local's executive board. R.34-2, PgID#303 (Phillips 11/13/2014 Dep.). She served in the Casino Chairperson role until she resigned from MGM in September 2015. *Id.*

As the Casino Chairperson, Phillips's duties included handling grievances, resolving disputes between union members and MGM, and participating in labor negotiations. *Id.* at PgID#303-04. These responsibilities required her to work closely with other Local executive board members including bargaining member-at-large Dewight Braxton, Local President Venus Jeter, and Local Vice President Shimeca McClendon-Jackson. R.34-2, PgID#305; R.39-3, Pg ID#902 (Jeter Affidavit (Aff.)); R.39-12. Pg ID#936 (McClendon-Jackson Aff.).

Phillips's union responsibilities also required her to work with various UAW employees. One such individual was Brian Johnson, UAW International servicing representative assigned to the Detroit area in 2012 to assist local unions with negotiations, contract administration, and grievance-handling. R.34-6, PgID#351 (Isaacson Aff.); R.39-6, PgID#917 (Phillips Aff.). Another was UAW representative David Kagels, who led negotiations with MGM and other Detroit casinos on behalf of UAW in 2011, 2012, and 2013. R.34-7, PgID#483-84 (Kagels Aff.).

Phillips alleges that she was subjected to a racially hostile environment while performing her union duties. She observed that Johnson generally treated black union members in an aggressive and hostile manner, while treating whites respectfully. R.39-6, PgID#917-19

(Phillips Aff.); see also R.39-12, PgID#937 (McClendon-Jackson Aff.).  He would yell at black members and call them incompetent, but speak to whites in a reserved and respectful tone.  R.39-6, PgID#918 (Phillips Aff.).  He was also violent—Phillips described one incident where he threw a file at her and another where he had to be physically removed from her office.  R.39-2, PgID#894 (Phillips 11/13/2014 Dep. at 121-24).

Phillips described several specific incidents of racial hostility.  For example, in approximately May 2012, Phillips, Braxton, and Johnson met at the Local to discuss grievances.  R.34-2. PgID#312 (Phillips 11/13/2014 Dep. at 133).  Johnson kept "cursing at" Phillips, and when Braxton told Johnson "that's enough," Johnson asked rhetorically if Braxton was Phillips's "bodyguard" because he was "big and black."  *Id.*  Phillips told UAW Region 1 Director Charles Hall about this comment.  *Id.*

From June 2012 until March 2013, UAW and MGM were in negotiations over VIP positions.  During one caucus meeting, Kagels started naming off union representatives that he would fire if he could, all of whom were black.  *Id.* at PgID#314 (Phillips Dep. at 189-91).  To Phillips, this implied that Kagels would fire all the black representatives if he had the authority.  *Id.*

In April or May 2013, Johnson met with Phillips and Braxton at the Local to prepare for a grievance meeting with MGM.  R.34-2, PgID#307 (Phillips Dep. at 72).  Johnson pulled out a grievance file and asked Braxton and Phillips what the race of the grievant was.  *Id.* at Pg ID#308 (Phillips Dep. at 74-76).  Phillips answered, "What does that have to do with anything?" *Id.*; *see also* R.34-3. PgID#327-28 (Phillips 10/5/2015 Dep. at 89-90).  Johnson replied, "Would you just answer the damn question?" Phillips told him the grievant was black, and Johnson flipped the file over.  R.34-2, Pg ID#308 (Phillips 11/13/2014 Dep. at 75).  After Phillips refused to tell Johnson the race of the remaining grievants, Braxton did.  *Id.* at 308-09 (Phillips Dep. at 75, 81).  Johnson separated the grievance files based on the race of the grievants, and Phillips concluded that Johnson was withdrawing the grievances of the black members and pushing the grievances of the white members forward to arbitration.  R.34-3, PgID#319-20 (Phillips 10/5/2015 Dep. at 44-45); R.39-6, PgID#919 (Phillips Aff.).

Phillips reported Johnson's conduct to the Local president, Jeter. R.34-3, Pg ID#327-30 (Phillips Dep. at 89-92). Jeter emailed UAW President Bob King a letter dated May 18, 2013— signed by Jeter and ten Local board members—complaining about Johnson and Kagels's "blatant disrespect" for Local members and requesting King's assistance. R.35-6, PgID#702-04 (5/18/2013 Memo). Kagels responded to Jeter in a June 2013 letter. R.39-9, PgID#929 (6/27/2013 letter). He indicated his belief that he and Jeter, during a March 2013 phone call, had discussed "many of the issues brought up in [Jeter's] e-mail [to King]." *Id.* He stated that, not hearing anything further from Jeter, he had "assumed that the issue had subsided." *Id.*

In a November or December 2013 meeting, Johnson told Phillips and McClendon-Jackson that the problem with the Local union was "there were too many blacks in the union" and "too many blacks on [the Local] board." R.39-6, PgID#919 (Phillips Aff.); R.35-1, PgID4542-43 (McClendon-Jackson Dep. at 36-37), R.39-12, PgID#937 (McClendon-Jackson Aff.); R.49-2, PgID#1217 (Phillips 10/5/2015 Dep. at 62-63). Johnson further stated that if the Local "had more whites, [it] wouldn't have the kind of problems it's having." R.49-2, PgID#1217 (Dep. at 63); *see also id.* at PgID#1217-18 (Dep. at 64-65) (Phillips not sure of "exact dates, but I remember what happened").

In January 2014, Jeter again wrote to the UAW, this time to UAW Region 1 Director Hall. R.35-7, PgID#705-06 (1/17/2014 letter). Although Jeter's May 2013 email to UAW President King had not specifically mentioned race, this letter did. Jeter wrote, "Several members have put in charges with the NLRB against Brother Johnson. Brian asked the Chair and Bargaining Member @ Large 'WHAT IS THE RACE OF SEVERAL GRIEVANTS'. Since when do we represent members by the color of their skin?" *Id.* at PgID#705.

Hall convened a February 10 meeting attended by at least Hall, Johnson, Phillips, and Jeter to discuss the issues raised in Jeter's letter. *See* R.49-2, PgID#1225 (Phillips 10/5/2015 Dep. at 95-96). Before the meeting, Hall conferred with Johnson about the allegations and Johnson denied representing union grievants based on the color of their skin. R.35-9, PgID#709-11 (Hall Dep. at 61-63, 80-83). Hall stated that he did not investigate these allegations closely because, based on his relationship with Johnson and his opinion of Johnson's character, he believed this was not something Johnson would do. *Id.* at PgID#711 (Hall Dep. at 83-84).

The day after the meeting, Phillips sent Hall an email listing the reasons she requested the UAW remove Johnson from his assignment to the Local.  R.35-8, PgID#707 (2/11/2014 email). Phillips stated that Johnson made an "inappropriate remark toward myself and Dewight (using the color of our skin)" and requested "member's race when going through the grievances."  *Id*. Phillips also wrote that she was "in shock to hear [Hall] say that Brian asking a member's race and separating grievances based on that" information was "common practice."  *Id*.  Jeter also wrote Hall following the meeting.  *See* R.35-10, PgID#713 (2/17/2014 letter).

Hall responded to Jeter, and copied Phillips, on February 17.  *Id*. at Pg ID#713-14.  Hall stated that Jeter's and Phillips's letters were "filled with inaccuracies," *id*., although he later clarified that he was referring only to Phillips's suggestion that he condoned separating grievances on the basis of race, R.35-9, PgID#710, 712 (Hall Dep.at 77-79, 89).  Hall concluded by assuring Jeter that Johnson would treat members of the Local professionally and stating that he expected Johnson to be treated respectfully in return.  R.35-10, PgID#714 (2/17/2014 letter).

Phillips sent Hall a February 25 email with the subject line "Final request for removal of Brian Johnson."  R.15-11, PgID#715 (2/25/2014 email).  Phillips reported that Johnson "lost control again" and "went into an angry rage yelling and screaming."  *Id*.  She further stated that "it [had] been 10 months" since she met with Hall to complain about Johnson's behavior "and still the problems continue."  *Id*.  Phillips told Hall that this was her final request for Johnson's removal and if action was not taken she would "go outside the UAW."  *Id*.